RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE  01  10 , 06
BY  ЯНB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOYCE R. CARTER,<br>Appellant | CIVIL ACTION<br>NO. CV05-0301-A |
| VERSUS | |
| JO ANNE B. BARNHART, COMMISSIONER<br>OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Joyce R. Carter ("Carter") filed applications for disability income benefits ("DIB") and supplemental security income ("SSI") benefits on November 29, 2000, alleging a disability onset date of November 9, 1999 (Tr. p. 58), due to lower back pain and right hip and leg pain (Tr. p. 65). Those applications were denied by the SSA (Tr. p. 26) and, after a de novo hearing, were also denied by an administrative law judge on March 27, 2002 ("ALJ"). It does not appear that Carter requested an Appeals Council review. The ALJ's decision became the final decision of the Commissioner of Social Security.[1]

---

[1] A prior determination of disability is binding on all parties to the hearing and has a res judicata effect as to that record. If the Commissioner reassessed a claimant's eligibility for benefits and no new evidence was submitted after the prior decision, the earlier findings as to disability may not be overruled merely on a reappraisal of earlier evidence. Accordingly, once evidence has been presented which supports a finding that a given condition exists, it is presumed in the absence of proof to the contrary that the condition has remained unchanged. Buckley v. Heckler, 739 F.2d 1047 (5th Cir. 1984), citing Rivas v. Weinberger, 475 F.2d 255 (5th Cir. 1973). Also, Rucker v. Chater, 92 F.3d 492 (7th Cir. 1996); Taylor v. Heckler, 742 F.2d 253, 254-57 (5th Cir. 1984); James v. Gardner, 384 F.2d

Carter filed second applications for DIB and SSI benefits on October 7, 2002, alleging a disability onset date of March 28, 2002 (Tr. pp. 231, 364), due to chronic pain (Tr. p. 238). Those applications were also denied by the SSA (Tr. p. 200). A de novo hearing was held before an ALJ on August 16, 2004, at which Carter appeared with her attorney, a medical expert, a vocational expert, and a witness (Tr. pp. 373-422). The ALJ found that, although Carter suffers from severe "vague complaints of continual extreme pain without any other objective diagnosis other than fibromyalgia" (Tr. p. 20), she has the residual functional capacity to perform the full range of sedentary work and, therefore, a finding of "not disabled" was directed by Medical-Vocational Guidelines Rule 201.28, through the date of the ALJ's decision on September 22, 2004 (Tr. pp. 22-24). Carter requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 7) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Carter next filed this appeal for judicial review of the Commissioner's decision. Carter raises the following issues for review on appeal:

---

784, 786 (4th Cir. 1967), cert. den., 390 U.S. 999, 88 S.Ct. 1205, 20 L.Ed.2d 99 (1968); Bain v. Heckler, 596 F.Supp. 253 (N.D.Tex. 1984).
    Since the ALJ who ruled on Carter's first applications found Carter was not under a disability as defined in the Social Security Act at any time through the date of his decision on March 27, 2002, despite her severe impairments of "mild arthritis in the right hip and pin in the lower back and right leg," res judicata attaches to the ALJ's finding of no disability as of that date. See Richardson v. Bowen, 807 F.2d 444, 446 (5th Cir. 1987).

2

1. It was legal error for the ALJ to fail to accept the rule that the defendant has the burden of proof to show the claimant can work, while at the same time requiring the claimant to prove she has some impairment in addition to fibromyalgia in order to deserve benefits.

2. It was error for the ALJ to refuse to give controlling weight to the findings and opinions of the treating physician (that the claimant is unable to work due to fibromyalgia), although the record is devoid of any evidence to the contrary.

Both parties submitted briefs. Carter's appeal is now before the court for disposition.

### Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or

3

mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for

4

that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

### Issue 1 - Burden of Proof

Carter contends it was legal error for the ALJ to fail to accept the rule that the defendant has the burden of proof to show the claimant can work, while at the same time requiring the claimant to prove she has some impairment in addition to fibromyalgia in order to deserve benefits. In his written decision, the ALJ stated (Tr. p. 20), "The Administrative Law Judge finds that the claimant met the burden of proving that vague complaints of continued extreme pain; [sic] without any other objective diagnosis other than fibromyalgia, significantly limits her from performing work activities."

Carter's burden was to prove she was disabled within the

5

meaning of the Social Security Act. That requirement means that she must show a "medically determinable" impairment and that she is unable "to engage in substantial gainful activity" due to her impairments. Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994); 20 C.F.R. §423(d)(1)(A) and (d)(3); 20 C.F.R. §404.1508; 42 U.S.C. §423(d)(1)(A).

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

Carter argues the ALJ erred in failing to recognize that she met her burden of proving disability due to fibromyalgia. Fibromyalgia is defined in Stedman's Medical Dictionary, 27th ed.:

> "Fibromyalgia is a complex rheumatic condition with no known cause or cure. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, above and below the waist, as

6

> well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites."

See also, the American College of Rheumatology's "1990 Criteria for the Classification of Fibromyalgia," at www.rheumatology.org/publications/classification/fibromyalgia.

The National Institute of Arthritis and Musculoskeletal and Skin Diseases discussed the diagnosis of fibromyalgia in "Questions and Answers About Fibromyalgia," available at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm, as follows:

> "A doctor familiar with fibromyalgia, however, can make a diagnosis based on two criteria established by the ACR: a history of widespread pain lasting more than 3 months and the presence of tender points. Pain is considered to be widespread when it affects all four quadrants of the body; that is, you must have pain in both your right and left sides as well as above and below the waist to be diagnosed with fibromyalgia. The ACR also has designated 18 sites on the body as possible tender points. For a fibromyalgia diagnosis, a person must have 11 or more tender points. (See illustration on page 5.) One of these predesignated sites is considered a true tender point only if the person feels pain upon the application of 4 kilograms of pressure to the site. People who have fibromyalgia certainly may feel pain at other sites, too, but those 18 standard possible sites on the body are the criteria used for classification."

The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. Sarchet v. Chater, 78 F.3d 305, 306 (7th

7

Cir. 1996). Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995), but most do not. Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist. Sarchet, 78 F.3d at 307.

The Social Security Administration recognizes Fibromyalgia Syndrome (FMS) and the American College of Rheumatology criteria for FMS, which includes a minimum number of tender points. Social Security Ruling 99-2p, "Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)," 1999 WL 271569, *8 n.3 (1999).

In the case at bar, Dr. Agnes Solon, a rheumatologist, examined and treated Carter from August 2001 through August 2002 (Tr. pp. 274-282), and stated on August 29, 2002, that she diagnosed Carter as suffering from fibromyalgia and referred Carter to a neurologist (Tr. p. 274).

Dr. Charles Ugokwe, a neurologist, examined Carter in September 2002, and diagnosed "myopathy"[2] (Tr. p. 286). Dr. Ugokwe did not note any trigger or tender points, although he stated the exam was significant for mild weakness involving the left upper and left lower extremities, a tremor in her outstretched hand, and limping gait (Tr. pp. 351-352).

---

[2] "Myopathy" is defined as "a disorder of muscle tissue or muscles." MEDLINEplus Health Information, Merriam-Webster Medical Dictionary, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

Dr. Eugene E. Taylor, an orthopedist, examined Carter in December 2002 at the request of the SSA, and did not find any significant abnormalities of the joints or muscles, and no nerve root impingement (Tr. pp. 290-291).

Dr. Solon continued to treat Carter through 2004 for pain in all of her joints (Tr. pp. 307-3). On December 13, 2002, Dr. Solon stated Carter had 18 out of 18 possible trigger points consistent with fibromyalgia (Tr. p. 346). On April 10, 2003, Dr. Solon stated Carter suffers from pain all over, more so over her right lower extremity, fatigue, and cold intolerance, and was taking Zanaflex, Ultracet, Bextra, and Ambien alternating with Amitriptyline; epidural steroid injections and physical therapy treatment had not helped (Tr. p. 335). On April 30, 2003, Dr. Solon noted Carter "continues to have 18 out of 18 possible trigger points consistent with fibromyalgia" (Tr. p. 331). Dr. Solon further noted that Carter is unable to lift more than 10 pounds, cannot perform repetitive motion with her upper and lower extremities, has chronic fatigue and exercise intolerance, and has chronic lower extremity pain (Tr. p. 331).

Although the ALJ referred, at the hearing (Tr. pp. 413-414) and in his decision (Tr. p. 20), to the absence of any other diagnosis for Carter's complaints, he appears to have said that more as confirmation of the diagnosis of fibromyalgia by exclusion of other possible causes. The ALJ concluded that Carter suffers from fibromyalgia. Therefore, the ALJ did not require an additional diagnosis. This issue is meritless.

9

## Issue No. 2 - Treating Physician

Next, Carter contends it was error for the ALJ to refuse to give controlling weight to the findings and opinions of the treating physician (that the claimant is unable to work due to fibromyalgia), although the record is devoid of any evidence to the contrary. Carter contends the ALJ erred in finding she can perform the full range of sedentary work, since Dr. Solon stated she could not perform repetitive motion with her upper and lower extremities, she has chronic fatigue, and she has chronic pain. Carter points out that Dr. Solon's findings are supported by Dr. Ugokwe's finding that Carter's "exam was significant for mild weakness involving the left upper and left lower extremities," including tremor in her outstretched hand and a limping gait (Tr. p. 286).

The ALJ is required to give substantial weight to the doctors' medical findings, not to their opinions about the actual availability of jobs for a person. <u>Loya v. Heckler</u>, 707 F.2d 211, 214 (5th Cir. 1983). In the case at bar, Dr. Solon stated that Carter was unable to work, in addition to setting forth specific physical limitations. The ALJ was not required to adopt Dr. Solon's opinion that there are no jobs Carter can perform due to her physical limitations.

However, the ALJ failed to explain why he did not include a limitation on repetitive motions with her extremities in Carter's residual functional capacity description. In <u>Myers v. Apfel</u>, 238 F.3d 617, 621 (5th Cir. 2001), the Fifth Circuit stated it has long held that ordinarily the opinions, diagnoses, and medical evidence

10

of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. However, the opinion of the treating physician is not conclusive and the ALJ must decide the claimant's status. Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief, conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. Myers, 238 F.3d at 621, citing Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).

Dr. Taylor, an orthopedic specialist, examined Carter and did not find there was anything wrong with her. However, Dr. Taylor only conducted an orthopedic examination. Likewise, the ALJ employed a general surgeon, Dr. Smith, as a "medical expert" to testify at Carter's hearing. However, Dr. Smith admitted that diagnosis and treatment of fibromyalgia was not only outside of his expertise, but he had never done so; therefore, Dr. Smith was not qualified to testify as an expert about Carter's fibromyalgia.

Dr. Solon, however, is a rheumatologist (the appropriate specialty for treating fibromyalgia) and Carter's treating

physician. No other medical evidence contradicts Dr. Solon's diagnostic findings and conclusions as to Carter's fibromyalgia and her resulting physical limitations. The ALJ's references to Carter's negative MRI, normal Doppler, normal lab work, and normal orthopedic exam (Tr. p. 20) are irrelevant. There is no medical evidence which contradicts Dr. Solon's and Dr. Ugokwe's findings.

An inability to perform repetitive motions with the extremities results in an inability to perform the full range of sedentary work. According to SSR 96-9p, "Determining Capability to Do Other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work," 1996 WL 374185, *1 (1996), limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base. However,

> "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."

SSR 96-9p, 1996 WL 374185, *8.

The ALJ's conclusion that Carter can perform the full range of sedentary work is not supported by substantial evidence because he failed to explain why he did not include a limitation on use of her extremities in Carter's residual functional capacity, as set forth

12

by Carter's treating physician.[3]

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Carter to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether Carter can perform her past relevant work and as to whether there are any jobs existing in sufficient numbers in the national economy which Carter can perform, given her true impairments. Therefore, Carter's case should be remanded to the Commissioner for further proceedings.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Carter's case be REMANDED to the Commissioner for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

---

[3] Although the ALJ also employed a VE, the VE only testified as to whether Carter could perform her past relevant work, and did not testify as to other, specific jobs Carter has the residual functional capacity to do.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of January, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE